ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
CALENDAR: C
PAGE 1 of 21
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

PATRICK DODD, an individual,

    *Plaintiff,*

v.

GREYHOUND LINES, INC., a Texas corporation, and FIRSTGROUP AMERICA, INC., a Delaware corporation,

    *Defendants.*

Case No.

JURY TRIAL DEMANDED

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Patrick Dodd, through his lawyers Edelson PC, brings this Complaint against Defendants Greyhound Lines, Inc. ("Greyhound") and Firstgroup America, Inc. ("FirstGroup"), based upon Defendants' misconduct and negligence that resulted in threats against Plaintiff's life, compromise of Plaintiff's physical and emotional well-being, and unlawful detention, alleges as follows:

### NATURE OF THE ACTION

1.    On January 12, 2018, Dodd boarded a Greyhound bus in Colorado intending to arrive in Atlanta for trucking school. Unbeknownst to Dodd, a series of errors by Defendants placed him in grave danger and sent him down a harrowing path that resulted in threats to his life and him eventually placed in handcuffs for hours.

2.    Dodd's experiences all stemmed from Defendants knowingly allowing Margarito Vargas-Rosas ("Vargas-Rosas") to board Dodd's bus, a passenger visibly under the influence of drugs and who actively fought with Greyhound security guards at the Milwaukee station.

3.    Almost immediately upon departure, Vargas-Rosas targeted Dodd and began threatening his life and hurling racially charged insults directly at him.

**EXHIBIT**

A

4.     For over the forty-five minutes, Dodd and others attempted to equally stop both Vargas-Rosas and the Greyhound bus. Neither effort succeeded. Even though Dodd and others contacted the police, who appeared around the bus in force within minutes, the Greyhound driver refused to stop. Likewise, the bus passengers begged the driver to pull over to no avail.

5.     Instead, Defendants left Dodd to fend for himself. Seeing this lack of action, and in response to Vargas-Rosas creating a racially hostile situation only focused on Dodd, other passengers heroically attempted to intervene and protect him. Trapped on the fast-moving bus, Dodd believed Vargas-Rosas' repeated statements that he had a gun which he could brandish and use at any minute.

6.     The bus finally stopped for law enforcement only after the Greyhound driver drove through *two separate spike strips*, one placed by Wisconsin police and one on the other side of the border by Illinois police.

7.     Thereafter, police forcefully removed Dodd from the bus, handcuffed him, and placed him in a police car for two hours.

8.     As if these events were not enough, Defendants placed Dodd in danger again by ordering him back on the now completely disabled bus (which had several blown tires) and driving to a new location for transfer.

9.     Defendants both created and failed to stop a series events which put Dodd in mortal danger and inflicted significant personal harm on him.

## PARTIES

10.     Plaintiff Patrick Dodd is a natural person and citizen of the State of Tennessee.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 2 of 21

11.    Defendant Greyhound Lines, Inc. is organized and exists under the laws of the State of Texas, with its principal place of business located at 350 North St. Paul Street, Dallas, Texas 75201. Greyhound is registered in Illinois to conduct business as a foreign corporation.

12.    Defendant FirstGroup America, Inc. is organized and exists under the laws of the State of Delaware, with its principal place of business located at 600 Vine Street, Cincinnati, Ohio 45202. FirstGroup is registered in Illinois to conduct business as a foreign corporation.

13.    Greyhound is responsible for the acts and omissions of its employees committed within the scope of their employment and while on duty.

14.    FirstGroup, as the owner of Greyhound, is responsible for Greyhound's corporate policies and procedures, and for ensuring Greyhound abides by its policies and procedures to ensure the safety of all passengers.

15.    Greyhound and FirstGroup, as a common carrier in Illinois, owe the highest duty of care to protect the safety and welfare of their passengers.

**JURISDICTION AND VENUE**

16.    This Court has jurisdiction over Defendants pursuant to 735 ILCS 5/2-209 because Defendants conduct business transactions in Illinois, committed tortious acts in Illinois, and are registered to do business in Illinois.

17.    This Court has personal jurisdiction over Defendants because they conduct significant business in this County, Plaintiff boarded Defendants' bus intended to arrive in this County, and a portion of the unlawful conduct alleged in this Complaint occurred in and emanated from this County.

18.    Venue is proper in Cook County, Illinois because Defendants maintain offices and an official presence in Cook County, and conducts business in Cook County. Venue is also

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 3 of 21

proper in Cook County because a portion of Defendants' action giving rise to the allegations in this Complaint took place in Cook County.

## COMMON FACTUAL ALLEGATIONS

19.     Greyhound is one of the most-recognizable transportation companies in the United States, and serves as the only national operator of scheduled intercity coach transportation services in the United States and Canada.

20.     FirstGroup owns Greyhound, and specializes in providing transportation services—including bus operations—throughout North America.

21.     Greyhound generates in excess of $5 billion in annual revenue by transporting nearly 18 million passengers through the United States and Canada each year and operates a fleet of approximately 1,600 vehicles throughout 4,000 destinations in the United States and Canada.

22.     Yet, even with their size and experience, Defendants are well aware of prior incidents involving unruly passengers and other circumstances that substantially threaten the safety of other passengers and/or the bus driver.

23.     On January 23, 2014, an individual named Maquel Donyel Morris attacked the driver of a Greyhound bus on a trip from Los Angeles, California to Phoenix, Arizona. While suspected of being under the influence of illegal drugs, Morris kicked down the partition separating the driver from the passengers, and caused the driver to crash the bus. The accident injured twenty-six passengers who had to receive some sort of treatment from local hospitals.

24.     Likewise, on October 9, 2013, a Greyhound bus driver allegedly fell asleep at the wheel during a trip from New York to Cleveland and crashed the bus into the back of a tractor-trailer. Some of the injuries sustained in this crash were severe, including an opera singer who shattered vertebrae in her neck that seriously diminished her ability to sing. A subsequent

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 4 of 21

investigation revealed Greyhound failed to enforce its own Rule G-40, which requires drivers to stop approximately every 150 miles to check the bus for safety and to refresh the driver.

25.     Defendants' failure to monitor its passengers, both before boarding and on the bus, as well as its failure to properly train and control its drivers, put Plaintiff in extreme danger and caused significant personal harm.

### I.     Dodd Boards a Greyhound Bus in Milwaukee Bound for Chicago

26.     On January 12, 2018, Dodd began his travels in Colorado destined for Atlanta, Georgia to begin training for a commercial driver's license through C.R. England, Inc.—a trucking company with driving schools throughout the country.

27.     Dodd's ticket provided for a brief stop and bus change in Milwaukee, Wisconsin, with an expected departure to Chicago, Illinois at 8:00pm local time.

28.     Prior to embarking from Colorado, Greyhound did not inspect, search, or scan Dodd's luggage, whether carry-on or checked baggage. Similarly, Greyhound did not inspect, search, or scan Dodd's luggage prior to leaving the Milwaukee station.

29.     On information and belief, Greyhound did not inspect, search, or scan the luggage of any passenger prior to boarding the bus at the Milwaukee station.

30.     Upon arrival in Milwaukee for a rest stop and to change buses, Dodd saw several Greyhound security personnel in a loud verbal confrontation with a person unknown to Dodd. Later, Dodd learned the individual engaging in the dispute with Greyhound security personnel at the Milwaukee station was Vargas-Rosas, who appeared to be under the influence.

31.     Despite the confrontation between Vargas-Rosas and Greyhound security, and his obvious state of intoxication, Greyhound personnel did not call the local police to address the incident or ensure Vargas-Rosas was not a threat to himself and others.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 5 of 21

32.     Instead, Greyhound personnel directed Vargas-Rosas to board the bus in Milwaukee bound for Chicago, on which Dodd was a passenger.

33.     Upon boarding, Vargas-Rosas sat near Dodd's seat towards the rear of the bus.

**II.     Vargas-Rosas Poses a Danger to Himself and Dodd by Threatening Violence**

34.     Shortly after leaving the Milwaukee station, Vargas-Rosas began acting erratically on the bus, including but not limited to threating other passengers, telling passengers he was going to start killing people, and using racial epithets. Vargas-Rosas repeatedly stated he had a gun.

35.     Dodd was the primary target of Vargas-Rosas' threats and unsettling behavior.

36.     In response to Vargas-Rosas' extreme behavior, and Defendants' inaction, other brave passengers placed themselves at risk by attempting to intervene.  At least one passenger stepped in between Dodd and Vargas-Rosas to physically shield Dodd from Vargas-Rosas's threats. Nevertheless, their efforts to curtail Vargas-Rosas' threatening behavior proved ineffective.

37.     Vargas-Rosas continued with his menacing conduct and threats to other passengers as the bus continued along the route.

38.     Fearing for his life, Dodd called his father to tell him about Vargas-Rosas' threats. Dodd's father called 911, and told Dodd to call 911 as well.

39.     Dodd called 911 and explained that a passenger on the Greyhound bus was making violent threats against him and other passengers, and said the passenger claimed to be armed with a gun. At least one other passenger also called 911 to inform authorities of the emergent situation.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 6 of 21

40.     Within minutes of Dodd's 911 call, Wisconsin law enforcement personnel began following behind and along the side of the Greyhound bus with lights flashing and sirens blaring.

41.     As they had been since the incident started, several passengers on the bus continued to yell at the Greyhound bus driver to pull over due to the ongoing chaos caused by Vargas-Rosas' threats and now the surrounding lights and sirens from law enforcement vehicles.

### III.    Defendants' Bus Driver Ignores the Increasingly Serious Situation

42.     Despite the police presence around the bus and the increasingly desperate requests from passengers, the Greyhound bus driver did not pull the vehicle over and continued driving down Interstate-94 from Wisconsin into Illinois.

43.     During this time, Dodd stayed on the phone with 911 and continued to inform them of the escalating dangerous situation on the bus.

44.     Seeing that the bus failed to stop in the face of an overwhelming police presence, Wisconsin law enforcement personnel laid down a spike strip across the highway to damage the bus tires to get the vehicle to stop.

45.     The Greyhound bus driver, however, drove through the spike strip and continued travelling down the highway notwithstanding the tire damage. As would be expected, the bus began to fishtail and felt out of control to passengers on board.

46.     Vargas-Rosas only increased the urgent nature of the situation by appearing to pull an unknown object from his waistband.

47.     In a panic, Dodd ducked between and underneath the seats out of fear Vargas-Rosas held a weapon and was about to kill him. As a result of this extreme moment of fear, Dodd experienced a panic attack.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 7 of 21

48.     While continuing to follow the bus with lights and sirens, police repeatedly tried directing the bus to pull over to the side of the road.  Heroic passengers on the bus also continued yelling at the Greyhound bus driver to pull over due to Vargas-Rosas' ongoing threats, the police presence, and the now out of control bus.

49.     The Greyhound bus driver completely ignored law enforcement in the area, ignored the demands from passengers, and ignored the rapidly deteriorating situation on his bus.

50.     After crossing the border into Illinois, police officers used a second spike strip across the highway due to the Greyhound bus driver's continued failure to pull over in the presence of law enforcement or to heed requests from passengers.

51.     The second spike strip caused additional damage to the Greyhound bus.

52.     Inexplicably, however, the Greyhound bus driver continued driving and did not pull over even after the second spike strip caused substantial damage to the rear tires. At this stage, the bus rode on several metal rims and was further out of control.

**IV.     The Greyhound Bus Driver Finally Pulls Over to Allow Police to Investigate**

53.     Around this time, Greyhound personnel called the driver and advised him of the very obvious fact that law enforcement needed him to pull over. Only at that point did the driver pull the vehicle over.

54.     Once the bus finally pulled over, the entire section of Interstate-94 was shut down by law enforcement, including traffic going in both directions.

55.     Approximately 40 minutes passed between the time a reasonable person in the position of the Greyhound bus driver should have pulled the vehicle over and the time the Greyhound bus actually came to a complete stop.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 8 of 21

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 9 of 21

56.   Police boarded the Greyhound bus, guns drawn, and began pulling passengers off one at a time.  Each passenger was handcuffed and put in the back of police vehicles while law enforcement removed all passengers.

57.   As the last passenger removed from the Greyhound bus, police handcuffed and subsequently arrested Vargas-Rosas.

58.    Police required Dodd, along with the other passengers, to remain in the back of police vehicles while law enforcement investigated.

## V.   Remarkably, Defendants Order Passengers Back Onto the Damaged Bus

59.   At approximately 2:00am, law enforcement released the remaining passengers.

60.   However, Defendants ordered the passengers back onto *the same bus* that suffered substantial tire damage following encounters with two police spike strips.

61.   Exacerbating the stress of the experience and putting Dodd in further danger, Defendants drove the damaged bus along the highway to an exit where a different Greyhound bus awaited the passengers in a large parking lot.

62.   At approximately 3:45am—nearly seven hours after the Greyhound bus was scheduled to depart Milwaukee—Dodd and the other passengers arrived in Chicago.

63.   Since the terrifying incident, Dodd has trouble sleeping, emotional distress, and other psychological challenges as a result of this terrifying experience.

## COUNT I

### Negligence

64.   The foregoing allegations are incorporated by reference as if fully set forth herein.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 10 of 21

65.     As a passenger aboard Defendants' commercial bus, Defendants had a duty to provide the highest degree of care for Dodd consistent with the type of vehicle used in the practical operation of Defendants' business.

66.     Defendants' duty to provide the highest degree of care for Dodd included taking reasonable steps to provide safe travel for passengers, including safety measures for luggage inspection.

67.     Under Illinois law, Defendants' duty owed to Dodd also extended to acts committed by Defendants' employees, other passengers, and strangers.

68.     Prior to boarding Dodd's bus at the Milwaukee station, Greyhound security personnel fought with Vargas-Rosas during a loud and alarming altercation.

69.     Accordingly, Defendants knew or reasonably should have known from facts and circumstances available to them that Vargas-Rosas posed a danger to others and was under the influence of illicit drugs.

70.     Defendants had a duty to exercise the highest degree of care to protect Dodd from assault, injury, or abuse.

71.     Defendants breached their duty to Dodd when they failed to protect Dodd from assault, injury or abuse at the hands of Vargas-Rosas.

72.     Defendants breached their duty to Dodd by allowing Vargas-Rosas to board Dodd's bus.

73.     Defendants breached their duty to Dodd by failing to stop the bus when it became apparent that Vargas-Rosas was threatening Dodd and other passengers.

74.     Defendants breached their duty to Dodd by failing to stop the bus when it became apparent law enforcement was in pursuit and requesting the bus pull over.

75.    Defendants breached their duty to Dodd by failing to inspect, search, or scan Vargas-Rosas' luggage before allowing him to board the bus.

76.    Defendants breached their duty to Dodd by failing to develop, implement, or execute reasonable luggage inspection procedures designed to provide safe travel for passengers.

77.    Defendants' breach of their duty to Dodd proximately caused Dodd to suffer injury in the form of emotional distress and an imminent fear of being killed or seriously injured.

78.    As such, Defendants are liable for the damages Dodd sustained as a result of his injuries from the incident.

## COUNT II

### Intentional Infliction of Emotional Distress

79.    The foregoing allegations are incorporated by reference as if fully set forth herein.

80.    Defendants' conduct in the operation of their bus, and treatment of Dodd, was extreme and outrageous, including but not limited to the following ways:

a.    Failing to check luggage before passengers board the bus;

b.    Allowing Vargas-Rosas to board the bus after fighting with Greyhound security personnel;

c.    Allowing Vargas-Rosas to board the bus despite being under the apparent influence of illicit drugs;

d.    Failing to take steps to curtail Vargas-Rosas' threatening behavior;

e.    Failing to stop the bus after passengers alerted the driver to Vargas-Rosas' threatening behavior;

f.    Failing to stop the bus once other passengers, including Dodd, demanded the driver pull over to curtail Vargas-Rosas' threatening behavior;

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 11 of 21

g.  Failing to stop the bus once the driver observed law enforcement pursuing the bus and noticeably requesting it stop;

h.  Failing to stop the bus once law enforcement laid the first set of spike strips across the highway;

i.  Failing to stop the bus once law enforcement laid the second set of spike strips across the highway;

j.  Failing to take reasonable action before, during, and after Defendants became aware of the threat Vargas-Rosas posed to Dodd and other passengers.

81.  Defendants' actions described above were extreme and outrageous under any objective or subjective standard.

82.  Any person of ordinary sensibilities would have suffered emotional distress under the same or similar circumstances experienced by Dodd as described above.

83.  Defendants' extreme and outrageous actions described above went beyond all possible bounds of decency.

84.  Based on the foregoing allegations, Defendants intended to cause Dodd emotional distress, or recklessly or consciously disregarded the probability of causing Dodd emotional distress.

85.  Defendants knew or reasonably should have known their failure to take any action against Vargas-Rosas, and by allowing him to board the same bus as Dodd, was substantially certain to cause emotional distress.

86.  Both the intensity and duration of Defendants' action and inaction constitute extreme and outrageous conduct.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 12 of 21

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 13 of 21

87.     Dodd suffered severe and extreme emotional distress as a result of the grave danger Defendants placed him in during the trip. No reasonable person could be expected to endure the trauma Dodd experienced on his bus ride from Colorado to Atlanta.

88.     Defendants could have, but did not, take action that would have prevented Dodd from suffering suffered severe and extreme emotional distress.

89.     Defendants' conduct actually and proximately caused Dodd's emotional distress.

90.     Dodd suffered injury and damages as a result of Defendants' extreme and outrageous conduct in the form of emotional distress and an imminent fear of being killed or seriously injured.

91.     Defendants are liable for the damages Dodd sustained as a result of Defendants' intentional infliction of emotional distress.

## COUNT III

### Negligent Infliction of Emotional Distress

92.     The foregoing allegations are incorporated by reference as if fully set forth herein.

93.     As passenger aboard Defendants' commercial bus, Defendants had a duty to provide the highest degree of care for Dodd consistent with the type of vehicle used in the practical operation of Defendants' business.

94.     Defendants' breached their duty to Dodd in one or more of the following ways:

a.  Failing to check luggage before passengers board the bus;

b.  Allowing Vargas-Rosas to board the bus after fighting with Greyhound security personnel;

c.  Allowing Vargas-Rosas to board the bus despite being under the apparent influence of illicit drugs;

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 14 of 21

    d.   Failing to take steps to curtail Vargas-Rosas' threatening behavior;

    e.   Failing to stop the bus after passengers alerted the driver to Vargas-Rosas' threatening behavior;

    f.   Failing to stop the bus once other passengers, including Dodd, demanded the driver pull over to curtail Vargas-Rosas' threatening behavior;

    g.   Failing to stop the bus once the driver observed law enforcement following the bus with lights and sirens blaring;

    h.   Failing to stop the bus once law enforcement laid the first set of spike strips across the highway;

    i.   Failing to stop the bus once law enforcement laid the second set of spike strips across the highway;

    j.   Failing to take reasonable action before, during, and after Defendants became aware of the threat Vargas-Rosas posed to Dodd and other passengers

95.    Any person of ordinary sensibilities would have suffered emotional distress under the same or similar circumstances experienced by Dodd as described above.

96.    Dodd was a direct victim of Defendants' breach of their duty of care owed to passengers.

97.    As a direct result of Defendants' conduct described above, Dodd suffered an immediate, severe, and extreme emotional response, which continues to the present day.

98.    Dodd suffered physical injuries as a result of Defendants' conduct described above in the form of a panic attack.

99.    No reasonable person could be expected to endure the trauma Dodd experienced.

100.    Defendants' conduct actually and proximately caused Dodd's emotional distress.

101.    Dodd suffered injury and damages as a result of Defendants' negligent infliction of emotional distress in the form of a panic attack and an imminent fear of being killed or seriously injured.

102.    Defendants are liable for the damages Dodd sustained as a result of Defendants' negligent infliction of emotional distress.

## COUNT IV

### False Imprisonment

103.    The foregoing allegations are incorporated by reference as if fully set forth herein.

104.    On January 12, 2018, Dodd had a reasonable expectation of safe travel from Milwaukee to Chicago on Defendants' bus within a reasonable period of time.

105.    As described more fully above, passengers alerted Defendants' bus driver to Vargas-Rosas' threatening conduct shortly after leaving the Milwaukee station. More specifically, passengers alerted the driver of their desire to stop the bus and get off.

106.    After Dodd, Dodd's father, and at least one other passenger called 911 regarding the situation on the bus, passengers demanded Defendants' bus driver pull over to address the problem with Vargas-Rosas and escape from the dangerous situation.

107.    Shortly after the 911 calls were made, law enforcement in Wisconsin and Illinois began following the bus with lights and sirens turned on.

108.    The police eventually laid down a set of spike strips across the highway in order to get Defendants' bus to pull over. Defendants' bus driver continued driving through the first set of spike strips without stopping.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 15 of 21

109. Police in Illinois laid a second set of spike strips across the highway in order to get Defendants' bus driver to pull over. Defendants' bus driver continued driving through the second set of spike strips without stopping.

110. The entire ordeal Dodd experienced lasted substantially longer than any reasonable person in his position would expect.

111. Immediately upon learning of Vargas-Rosas' threatening conduct, Defendants' bus driver should have stopped the bus to investigate the situation and ensure the passengers' safety.

112. Defendants are responsible for the actions and inaction of the bus driver.

113. Because Defendants' bus driver continued driving down Interstate-94 without regard to demands from Dodd and other passengers to pull over, or the multiple police attempts to intervene, Defendants unlawfully restrained Dodd and other passengers.

114. Throughout the relevant time of this unlawful restraint, Defendants acted without reasonable grounds to continue restraining Dodd's movement.

115. Indeed, Defendants' bus driver should have pulled the bus over so Vargas-Rosas could be arrested by law enforcement, at which point Dodd would have been released from Defendants' confinement.

116. Defendants' false imprisonment injured Dodd and caused damages.

117. Defendants are liable to Dodd for the damages sustained during the period Defendants falsely imprisoned Dodd.

## COUNT V

### Negligent Hiring

118. The foregoing allegations are incorporated by reference as if fully set forth herein.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 16 of 21

119.    On January 12, 2018, Defendants owed a duty of care to its passengers when hiring its bus drivers.  These duties include, but are not limited to ensuring hired bus drivers are competent and hold appropriate licenses to address issues concerning:

     a.   General safety rules of the road applicable to all drivers;

     b.   Safety procedures specifically applicable to operation of commercial buses;

     c.   Assessing and appropriately responding to emergency situations;

     d.   Appropriate responses to law enforcement while operating a commercial bus

120.    Defendants breached their duty of care to its passengers, including Dodd, when hiring its bus drivers in one or more of the following ways:

     a.   Defendants' bus driver failed to adhere to general safety rules of the road;

     b.   Defendants' bus driver failed to adhere to safety procedures specifically applicable to the operation of commercial buses;

     c.   Defendants' bus driver failed to properly assess and appropriately respond to an emergency situation;

     d.   Defendants' bus driver failed to provide an appropriate response to law enforcement on the highway while operating the commercial bus.

121.    Defendants' breached their duty of care to passengers, including Dodd, by hiring the driver operating Dodd's bus on January 12, 2018.  Defendants' bus driver failed to adhere to general safety rules of the road, failed to adhere to safety procedures applicable to operating a commercial bus, failed to properly assess and appropriately respond to an emergency situation, and failed to provide an appropriate response to law enforcement on the highway while operating the commercial bus.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 17 of 21

122. Defendants' breach of their duty described above proximately caused injuries to Dodd.

123. Dodd sustained damages from his injuries as result of Defendants' negligent hiring of their bus driver in the form of emotional distress and an imminent fear of being killed or seriously injured.

124. Defendants are liable for the damages Dodd sustained as a result of Defendants' negligence.

**COUNT VI**

**Negligent Training and Supervision**

125. The foregoing allegations are incorporated by reference as if fully set forth herein.

126. On January 12, 2018, Defendants owed a duty to its passengers, including Dodd, to properly train and supervise drivers regarding Defendants' policies and procedures designed to protect the safety of all passengers.

127. Defendants' duty included the obligation to provide appropriate training and supervision to ensure bus drivers understood and executed Defendants' policies and procedures designed to ensure the safety of all passengers, including Dodd.

128. On January 12, 2018, Defendants breached their duty to all passengers, including Dodd, to ensure bus drivers received appropriate training and supervision in one or more of the following ways:

    a. Allowing Vargas-Rosas to board the bus after fighting with Greyhound security personnel;

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 18 of 21

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 19 of 21

b. Allowing Vargas-Rosas to board the bus despite being under the apparent influence of illicit drugs;

c. Failing to take steps to curtail Vargas-Rosas' threatening behavior on the bus;

d. Failing to stop the bus after passengers alerted the driver to Vargas-Rosas' threatening behavior;

e. Failing to stop the bus once other passengers, including Dodd, demanded the driver pull over to curtail Vargas-Rosas' threatening behavior;

f. Failing to stop the bus once the driver observed law enforcement following the bus with lights and sirens blaring;

g. Failing to stop the bus once law enforcement laid the first set of spike strips across the highway;

h. Failing to stop the bus once law enforcement laid the second set of spike strips across the highway;

i. Failing to take reasonable action before, during, and after becoming aware of the threat Vargas-Rosas posed to Dodd and other passengers

j. Failing to adhere to general safety rules of the road;

k. Failing to adhere to safety procedures specifically applicable to operation of commercial buses;

l. Failing to properly assess and appropriately respond to an emergency situation;

m. Failing to provide an appropriate response to law enforcement on the highway while operating the commercial bus.

129. Dodd sustained damages and injuries as result of Defendants' negligent training and supervision of their bus driver's in the form of emotional distress and an imminent fear of being killed or seriously injured.

130. Defendants are liable to Dodd for the damages sustained as a result of their negligent training and supervision.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Patrick Dodd, respectfully requests the Court enter an order of judgment in his favor and against Defendants Greyhound Lines, Inc. and FirstGroup America, Inc., and ordering the following relief:

A. Finding Defendants liable on all counts of Plaintiff's Complaint;

B. Awarding monetary damages to Plaintiff in excess of $30,000, in an amount to be determined at trial;

C. Awarding Plaintiff pre- and post-judgment interest, to the extent allowable;

D. Awarding such other relief as the Court deems just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby requests a trial by jury for all claims that can be so tried.

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 20 of 21

Dated: February 28, 2018

Respectfully submitted,

PATRICK DODD

/s/ Alfred K. Murray II
Jay Edelson
jedelson@edelson.com
Christopher L. Dore
cdore@edelson.com
Alfred K. Murray II
amurray@edelson.com
EDELSON PC

350 North LaSalle Street, 14th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378
Firm ID: 62075

ELECTRONICALLY FILED
2/28/2018 10:17 AM
2018-L-002125
PAGE 21 of 21

 CT Corporation

**Service of Process Transmittal**
03/13/2018
CT Log Number 532956537

**TO:** Tina Parks
FirstGroup America, Inc.
2221 E Lamar Blvd, Suite 500
Arlington, TX 76006-7419

**RE:** **Process Served in Illinois**

**FOR:** FirstGroup America, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | PATRICK DODD, etc., Pltf. vs. GREYHOUND LINES, INC., etc. and FIRSTGROUP AMERICA, INC., etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summonses, Complaint, Attachment(s) |
| **COURT/AGENCY:** | Cook County Circuit Court - County Department - Law Division, IL<br>Case # 2018L002125 |
| **NATURE OF ACTION:** | Vargas-Rosas Poses a Danger to Himself and Dodd by Threatening Violence |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Chicago, IL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/13/2018 at 10:30 |
| **JURISDICTION SERVED :** | Illinois |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, not counting the day of service |
| **ATTORNEY(S) / SENDER(S):** | Alfred K. Murray II<br>EDELSON PC<br>350 North LaSalle Street, 14th Floor<br>Chicago, IL 60654<br>312-589-6370 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/14/2018, Expected Purge Date: 03/19/2018<br><br>Image SOP<br><br>Email Notification, Joshua Welker joshua.welker@firstgroup.com<br><br>Email Notification, Tina Parks tina.parks@firstgroup.com<br><br>Email Notification, Lynette Obregon lynette.obregon@firstgroup.com<br><br>Email Notification, Tina Parks tina.parks@firstgroup.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>208 South LaSalle Street<br>Suite 814<br>Chicago, IL 60604<br>312-345-4336 |

Page 1 of 1 / IP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Summons - Alias Summons                                                      (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PATRICK DODD

v.                                          No. 2018-L-002125

GREYHOUND LINES, INC.; FIRSTGROUP          Defendant Address:
AMERICA, INC.                               FIRSTGROUP AMERICA, INC.
                                            CT CORP SYSTEM- 208 S. LASALLE ST.
                                            814
                                            CHICAGO, IL 60604

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

   YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie          ☐ District 3 - Rolling Meadows    ☐ District 4 - Maywood
   5600 Old Orchard Rd.           2121 Euclid 1500                  Maybrook Ave.
   Skokie, IL 60077               Rolling Meadows, IL 60008         Maywood, IL 60153

☐ District 5 - Bridgeview      ☐ District 6 - Markham            ☐ Richard J. Daley Center
   10220 S. 76th Ave.             16501 S. Kedzie Pkwy.             50 W. Washington, LL-01
   Bridgeview, IL 60455          Markham, IL 60428                 Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

## IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 62075                          Witness:        Wednesday, 28 February 2018

Name: EDELSON PC                            /s DOROTHY BROWN

Atty. for: PATRICK DODD                     DOROTHY BROWN, Clerk of Court

Address: 350 N LASALLE 13TH FL

City/State/Zip Code: CHICAGO, IL 60654      Date of Service: _____

Telephone: (312) 589-6370                   (To be inserted by officer on copy left with Defendant or other person)

Primary Email Address: amurray@edelson.com

Secondary Email Address(es):                **Service by Facsimile Transmission will be accepted at:

_____             _____

_____             (Area Code)   (Facsimile Telephone Number)

## DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### Page 1 of 1

**DIE DATE**
03/21/2018



DOC.TYPE:     LAW
CASE NUMBER:   18L002125
**DEFENDANT**
FIRSTGROUP AMERICA INC
208 S LASALLE ST
CHICAGO, IL 60604
814

**SERVICE INF**
RM 801


**ATTACHED**

Summons - Alias Summons                                    (12/31/15) CCG N001

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

PATRICK DODD

v.

GREYHOUND LINES, INC.; FIRSTGROUP
AMERICA, INC.

No.  2018-L-002125

Defendant Address:
FIRSTGROUP AMERICA, INC.
CT CORP SYSTEM- 208 S. LASALLE ST.
814
CHICAGO, IL 60604

☑ SUMMONS ☐ ALIAS - SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room 801 _____ ,Chicago, Illinois 60602

☐ District 2 - Skokie
  5600 Old Orchard Rd.
  Skokie, IL 60077

☐ District 3 - Rolling Meadows
  2121 Euclid 1500
  Rolling Meadows, IL 60008

☐ District 4 - Maywood
  Maybrook Ave.
  Maywood, IL 60153

☐ District 5 - Bridgeview
  10220 S. 76th Ave.
  Bridgeview, IL 60455

☐ District 6 - Markham
  16501 S. Kedzie Pkwy.
  Markham, IL 60428

☐ Richard J. Daley Center
  50 W. Washington, LL-01
  Chicago, IL 60602

You must file within 30 days after service of this Summons, not counting the day of service.

IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

☑ Atty. No.: 62075

Name:  EDELSON PC

Atty. for:  PATRICK DODD

Address:  350 N LASALLE 13TH FL

City/State/Zip Code:  CHICAGO, IL 60654

Telephone:  (312) 589-6370

Primary Email Address: amurray@edelson.com

Secondary Email Address(es):

Witness:          Wednesday, 28 February 2018

/s DOROTHY BROWN

DOROTHY BROWN, Clerk of Court

Date of Service: _____
(To be inserted by officer on copy left with Defendant or other person)

**Service by Facsimile Transmission will be accepted at:

_____
(Area Code)   (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**Page 1 of 1**

DIE DATE
03/21/2018

DOC.TYPE:   LAW
CASE NUMBER:   18L002125
DEFENDANT
FIRSTGROUP AMERICA INC
208 S LASALLE ST
CHICAGO, IL 60604
814

SERVICE INF
RM 801

ATTACHED